The judgment of the court (Slidell, J. recusing himself, having been counsel in the case) was pronounced by
Eustis, C. J.
This cause has been before this court on a previous occasion. Vide 2d Ann. 656. In June, 1847, it was remanded for a new trial to the district court, for the purpose of enabling the parties to amend the pleadings under which the cause had been tried in the court below: this court being of opinion that justice had not been done between the parties, by reason of the manner in which the plaintiffs grounds of action against the defendants had been set forth in her petition. By the judgment from which that appeal was taken, the plaintiff had recovered the sum of $9975 11. The trial was before the court. On the new trial, the case was submitted to a jury, who found a general verdict for the defendants. The district judge refused a new trial, and from the judgment rendered on this verdict the plaintiff has appealed.
The definite grounds of action which the plaintiff has set forth against the defendants and on which the case was tried, are: 1st, that the defendants had in their possession the steamer Claiborne, then running on the Mississippi river and belonging to the succession of Israel Barrett, whose administratrix the plain *254 tiff was; that the steamer was insured to the amount of $15,000, and on a colIison taking place between the said steamer and the steamer Empire, the former was so injured and damaged that the underwriters were liable for a total loss ; and that it was the duty of the defendants to have abandoned her and to have recovered as for a total loss; that by neglecting so to do, the defendants made themselves liable to pay the plaintiff the amount of said insurance thus neglected to be recovered.
The second ground is, the alleged wrongful taking possession of the steamer by the defendants, a short time after the decease of Barrett, and running her up to the time of the accident.
It appeal's that in 1840, Barrett was the owner of the steamer Claiborne, then employed in the Natchez and Vicksburg trade, and having some transactions with J. W. Zacharie 8f Co., who were merchants in New Orleans, executed a bill of sale of the boat to James W. Zacharie, for the consideration of $12,000, in three several promissory notes of $4000 each, payable at different periods. The bill of sale bears date the 14th of April, 1840 ; and on the same day Zacharie gave Barrett a counter-letter to the effect, that the bill of sale was for the purpose of securing Barrett's debt to the house of J. W, Zacharie Co., and that Barrett having returned to him (Zacharie) his notes, it was understood that when Barrett should have settled all his responsibilities to the house, the steamer was to be re-conveyed to him. Barrett caused the boat to be insured; the papers at the customhouse were not changed: Barrett commanded the boat in the trade until about the 10th of September, 1840, when he died at Natchez, having previously entrusted the boat to the mate to take her to New Orleans, who continued in her up to the time of the accident of collision with the Empire, which took place on the 4th November, 1840. Shortly after the death of Barrett, the plaintiff who is his widow, appointed J. R. Bieddleman, master, and Buel clerk of the boat, according to the request of the deceased previous to his death; they remained in charge up to the time of the accident. The succession of Barrett was opened in the parish of West Feliciana, and the plaintiff was appointed administratrix on the 16th of October, 1840.
On the 12th of October, 1840, J. W. Zacharie, to whom the conveyance of the boat had been made in April previous, had the papers changed at the customhouse and the boat enrolled in his name. She was engaged in the trade up to the time of the accident, but earned little money. The officers appointed by the plaintiff appear to have had the entire management of the boat, as well as of her receipts and disbursements. The defendants do not appear to have exercised any control over her, or to have taken any part in the management of her business, inconsistent with the exclusive ownership of the plaintiff as the administratrix of her husband’s succession.
The plaintiff being present, for her residence in Feliciana so far as her business and duty were concerned, cannot be considered as making her a stranger as to what was done in a matter of this kind; we say, the plaintiff being considered as present, it was a question of fact for the jury to determine to what extent she must be considered, from her own acts, as consenting to what was done while the boat was in the name of Zacharie, deeming it, as she undoubtedly did, as for the benefit of the interests of the succession. We are satisfied with the verdict of the juiy on this point, and believe it to be in strict accordance with the evidence adduced ; and that so far as the succession of Barrett is concerned, there is no claim for damages against the defendants for the change in the enrolment at the customhouse, or any act touching the possession or management of the boat.
*255 A survey was held upon the boat after the accident, and an estimate of damage made. Zacharie did not abandon, but sold the boat at public auction for $1,000, and settled with the underwriters on the basis of a partial loss. That the sale was made with the full knowledge and consent of the plaintiff, the evidence is conclusive. She was in the city and conferred with the defendants about it. It is also in evidence that after the sale was determined on, the plaintiff herself removed from the boat nearly the whole of the furniture, which the witness estimates loosely at from $1200 to $1500, though it may have cost double that sum.
It is not pretended that the defendants received any orders or directions concerning the adjustment of the insurance; and the fact of the sale with the plaintiff’s consent, may be considered as disposing of the right of abandonment, if it existed, that is, if the circumstances of the case warranted it.
Whether the case authorised an abandonment, is a question of law which has not been adjudicated in this State, depending upon authorities which are in some respects conflicting, or upon an usage which has never been judicially l’ecognised; and it would be requiring too much from an agent to oblige him to determine this question, and to determine it correctly at his peril. The defendants having acted in this contingency with good faith, and to the best of their judgments, and, as the jury were authorised in believing, with the concurrence of the plaintiff, we think are not liable for not having made the abandonment. The jury, were aware of the condition of the plaintiff and had before them evidence of the agency she took in the business of the succession. They undoubtedly considered her sex, and based their verdict upon their views of the conduct of the defendants under circumstances which it was incumbent on them to scrutinise and weigh. We do not understand any objection to the adjustment and settlement made as for a partial loss ; the controversy being exclusively on the liability of the defendants for not making the loss total by an abandonment.
The judgment of the district court is therefore affirmed, with costs.